# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7614 | **DATE** | 4/19/2000 |
| **CASE TITLE** | ANNETTE M. ALLEN, et al. vs. CHICAGO TRANSIT AUTHORITY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion to dismiss [23-1] is granted in part and denied in part. Plaintiff Rahpre Newberry's Title VII allegations of retaliation (Count V) before January 25, 2000 are dismissed with prejudice. Plaintiff Brian Marshall's Title VII claims in Count I are dismissed without prejudice. All plaintiffs' §1981 claims are dismissed without prejudice. The motion is denied in all other respects. Defendant shall answer the amended complaint by May 5, 2000. ENTER MEMORANDUM OPINION AND ORDER

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **number of notices** | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | *APR 20 2000* | | |
| | Docketing to mail notices. | **date docketed** | | 43 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | **docketing deputy initials** | | |
| | | | 4/19/2000 | |
| jad | courtroom deputy's initials | | **date mailed notice** | |
| | | Date/time received in central Clerk's Office | **mailing deputy initials** | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

APR 2 0 2000

ANNETTE M. ALLEN, SHELLEY S. )
BURNETTE, EARNEST LEONARD, BRIAN )
R. MARSHALL, and RAHPRE NEWBERRY, )    No. 99 C 7614
on behalf of themselves and all )
others similarly situated, )    Suzanne B. Conlon, Judge
)
                    Plaintiffs, )
)
        v. )
)
CHICAGO TRANSIT AUTHORITY, )
)
                    Defendant. )

## MEMORANDUM OPINION AND ORDER

Annette M. Allen, Shelley S. Burnette, Earnest Leonard,
Brian Marshall and Rahpre Newberry ("plaintiffs") sue the Chicago
Transit Authority ("the CTA") for employment discrimination and
retaliation.  In their first amended class action complaint,
plaintiffs allege they have been denied promotions, equal pay,
and other substantial employment benefits by the CTA on the basis
of race, in violation of Title VII, 42 U.S.C. §2000e et. seq.
(Count I) and 42 U.S.C. §1981 (Count II).  In Counts III-V,
plaintiffs allege they were harassed in retaliation for filing
discrimination charges with the affirmative action unit of the
CTA , the Illinois Department of Human Rights ("IDHR"), and the
Equal Employment Opportunity Commission ("EEOC") in violation of
Title VII and §1981.  The CTA moves to dismiss the Title VII
claims of Leonard, Newberry and Marshall, all plaintiffs' Title
VII claims other than those regarding promotions and all

43

plaintiffs' §1981 claims pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

### I    The parties

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor.  _Travel All Over the World, Inc. v. Kingdom of Saudi Arabia_, 73 F.3d 1423, 1429 (7th Cir. 1996).  Plaintiffs are African-American CTA employees. Allen and Burnette are senior personnel specialists in the human resources division.  Allen has worked for the CTA since March 1986 and Burnette since June 1987.  Leonard is a duplicator operator III in the communications department.  Leonard has worked for the CTA since 1991.  Marshall is currently the professional programs coordinator within the training department and has worked for the CTA since 1989.  Newberry is a communications specialist in the management information systems department and has worked for the CTA since 1990.

The CTA is an Illinois municipal corporation engaged in the business of providing public transportation in Chicago.  CTA employees are generally organized into three branches: management and performance; customer service, facilities and development; and transit operations.  Plaintiffs all work within the management and performance branch.  The human resources division

2

is within the management and performance branch and has authority for promotions, advancements, and salary decisions. Prior to January 1, 2000, Thomas Czech, vice president of human resources, managed the human resources division and approved all promotion, advancement and salary decisions.

## II   Allegations of racial discrimination and retaliation

### A    Allen and Burnette

Allen and Burnette claim the CTA denied them promotion opportunities due to their race. It is traditional that job openings within the CTA are posted so that existing employees can apply. Allen and Burnette assert the CTA failed to follow a consistent pattern or practice concerning the filling of available open positions in their department. They allege that on numerous occasions, the CTA filled open managerial positions without posting notice of the opening to allow existing employees to apply for the positions. They further allege the CTA improperly denied them posted positions. Allen and Burnette contend that since September 1997 they qualified for numerous promotion opportunities but the CTA filled the positions with less qualified whites. Allen and Burnette complained to the CTA's affirmative action unit claiming racial discrimination. They allege that the CTA's affirmative action unit found they had been subjected to racial discrimination in promotions, but no action was taken.

On October 24, 1997, Allen and Burnette filed discrimination charges with the IDHR and EEOC. They allege that after they initially complained about discrimination, both were harassed by unwarranted disciplinary actions. These actions included warnings and picayune complaints from their supervisors. Allen and Burnette allege they have been selectively disciplined while uncomplaining employees are not disciplined for the same conduct. On February 9, 1999, Allen filed an additional discrimination charge with the IDHR and the EEOC complaining of retaliation and received a right-to-sue letter. Burnette filed an additional discrimination charge with the IDHR and the EEOC complaining of retaliation on August 13,1999, but has not yet received a right-to-sue letter concerning this charge.

B    Leonard

The CTA hired Leonard in 1991 as a bus driver. At the time he was hired, Leonard had worked in the printing industry for 25 years. In February 1993, Leonard transferred to the CTA's printshop, where he presently works. Leonard alleges that in September 1997, the position of manager of reprographics was posted and he applied. Leonard was not selected and the position was filled by Joseph Mitria, a non-African-American employee with no experience in printing. Within a year of Mitria's promotion, Leonard sought but was denied an upgrade to a grade 5 position within the print department. While the reason given for denying

4

Leonard the upgrade was a lack of funds, he alleges that two white employees with less seniority were given upgrades. In late 1998, a coordinator position was posted for which Leonard asserts he was fully qualified. He applied for the position but was not selected and a non-African-American employee with less experience filled the position. In November 1998, another coordinator position was posted for which Leonard was qualified and he again applied. Despite his qualifications, Leonard was not selected and the position was filled by a non-African-American from outside the CTA.

In August 1998, Leonard filed a complaint of racial discrimination with the CTA's affirmative action unit alleging Leonard had been denied promotions and harassed due to his race. As a result, Leonard was upgraded to a temporary grade 7 position. After he filed this complaint, Leonard alleges he has been subjected to a campaign of harassment, including a demotion, unwarranted disciplinary warnings and writeups, and interference with other promotion opportunities.

### C    Marshall

The CTA hired Marshall in 1989 as a professional programs assistant. Marshall is currently a professional program coordinator. Marshall alleges that in late 1997 or early 1998, the CTA established a customer service division and the president of the CTA recommended him for the position of general manager,

data research and business outreach. Marshall claims this promotion was vetoed by the vice president of human resources and the position was not filled. Marshall further alleges that in August 1998, the position of general manager of market development and special events became vacant but the CTA filled the position, without posting it, with a non-African-American who was not as qualified as Marshall. In February 1999, the CTA posted an opening for the position of manager of marketing and Marshall applied. According to Marshall, he was the most qualified candidate but the CTA decided not to fill the position rather than offer it to him.

D    **Newberry**

Newberry was hired by the CTA in 1990 as a senior program analyst. Newberry has a degree in data processing and computer sciences. Newberry claims that beginning in 1994, he was consistently assigned to work outside his job description and was not permitted to perform the work of a senior program analyst. Newberry claims he was denied opportunities for pay increases and has been denied the opportunity for advancement and promotion as a result. Newberry further alleges he was paid less than non-African-American senior program analysts in his department. In January 1998, Newberry filed a complaint with the CTA's affirmative action unit alleging his adverse treatment, including denial of pay increases and promotions that were given to non-

African-American analysts.  On August 24, 1998, the CTA's
affirmative action unit found "cause to support [Mr. Newberry's]
allegation of race and adverse treatment."  Am. Compl. ¶ 43.

Newberry claims the CTA retaliated against him after he
initially filed a complaint with the CTA's affirmative action
unit in January 1997.  Newberry alleges that since filing the
complaint, he has been subjected to a campaign of harassment,
including trumped-up disciplinary charges, constant
reassignments, pervasive monitoring and assignments of
meaningless jobs outside his classification.  As a result of the
stress, Newberry was forced to take a six month leave of absence.
Newberry asserts that upon his return, the CTA resumed its
pervasive monitoring of his every move.  He claims no other
employee was subjected to this type of surveillance.

III  Class allegations

Plaintiffs allege the CTA has continuously discriminated
against African-American employees in awarding promotions.
Plaintiffs claim because of this discrimination, the CTA has
frequently declined to award promotions to fully qualified
African-American applicants and instead has promoted less
qualified non-African-Americans.  Plaintiffs claim the CTA has
implemented these discriminatory promotion practices in some
cases by posting job openings and then promoting non-African-
Americans in the place of African-American applicants who are

equally or better qualified.  In other cases, the CTA has implemented it discriminatory promotion and salary practices by not posting job openings and by placing non-African-Americans in the non-posted positions without affording African-Americans the opportunity of applying.  According to plaintiffs, the CTA has paid African-American employees at lower salaries than non-African-Americans at the same level and with comparable seniority.  As a result of these practices, a disproportionately high number of African-Americans occupy lower paid jobs with less authority and responsibility, while a disproportionately high number of non-African-Americans occupy the higher paid jobs with more authority.

## DISCUSSION

I    Motion to dismiss standard

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  A motion to dismiss tests the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  A complaint is not required to allege all, or any, of the facts supporting a claim.  Bennet v. Schmidt, 153 F.3d 516 (7th Cir. 1998).  All that

is required is a short and plain statement showing that plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a); <u>Doherty v. City of Chicago</u>, 75 F.3d 318, 322 (7th Cir. 1996). Any ambiguities in the complaint are construed in plaintiffs' favor. <u>Kelley v. Crosfield Catalysts</u>, 135 F.3d 1202, 1205 (7th Cir. 1998). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle him to relief. <u>Travel All Over the World, Inc.</u>, 73 F.3d at 1429.

Before addressing the merits, it is necessary to clarify what is properly before the court for the purposes of this motion. A substantial portion of the arguments and materials submitted to the court are inappropriate for a motion to dismiss. In reviewing a Rule 12(b)(6) motion, the court is limited to the allegations contained in the pleadings. Generally, documents not included with the complaint are outside the pleadings and cannot be considered. <u>Carter v. Stanton</u>, 405 U.S. 669, 671 (1972). The parties have attached and cite documents that cannot be considered on a 12(b)(6) motion to dismiss. The CTA has attached twelve exhibits to its motion to dismiss and two to its reply brief, including correspondence between the EEOC and Newberry, correspondence between the EEOC and the CTA, a letter from the EEOC to the Department of Justice, and the affidavit of a CTA paralegal with copies of a certified mail receipt. Similarly, plaintiffs have attached eleven documents to their response, including EEOC correspondence and a copy the CTA's first set of

9

interrogatories. These documents are outside the pleadings. In this situation, the court must either convert the 12(b)(6) motion to a motion for summary judgment under Fed. R. Civ. P. 56 and proceed under that rule, or disregard the documents. Levenstein, 164 F.3d at 347. Considering that discovery is still open, the court declines to convert the motion into one for summary judgment.

Several exhibits may be considered. The CTA attached copies of some of plaintiffs' EEOC charges and a right-to-sue letter issued to Newberry. Documents a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to plaintiff's claim. Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998). In the amended complaint, plaintiffs allege they filed timely charges of discrimination with EEOC and fully complied with all administrative prerequisites necessary to bring their lawsuit. Am. Compl. ¶ 2. Accordingly, the court considers the EEOC charges and right-to-sue letter attached to the CTA's motion to dismiss. See Venture Assoc. Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (1993); see also Greene v. Term City, Inc., 828 F.Supp. 584, 586, n. 1 (N.D. Ill. 1993) (EEOC charges attached to defendant's motion to dismiss part of the pleadings); Kevwitch v. Sea-Land Service, Inc., 1994 WL 159358 *2 (N.D. Ill. 1994) (same). Similarly, plaintiffs attached copies of some of their

EEOC charges, a right-to-sue letter issued to Leonard, and other
documents regarding their discrimination charges. In their
response brief, plaintiffs allege additional facts regarding
their EEOC charges and the exhaustion of administrative remedies.
A plaintiff may supplement with an affidavit or brief additional
facts to defeat a motion to dismiss if the facts are consistent
with allegations in the complaint. Hentosh v. Herman M. Finch
Univ., 167 F.3d 1170, 1173 n. 3 (7th Cir. 1999) (citing Hrubec v.
National R.R. Passenger Corp., 981 F.2d 962, 964 (7th Cir. 1992)).
Accordingly, the court also considers the EEOC charges and right-
to-sue letter plaintiffs attach to their response. Id.; Saldana
v. City of Chicago, 972 F.Supp. 453, 455 (N.D. Ill. 1997)
(considering EEOC charge attached to plaintiff's response brief).

## II   Title VII claims

In Count I, plaintiffs allege they have been denied
promotions, equal pay, and other substantial employment
opportunities and benefits by the CTA due to their race in
violation of Title VII. In Counts III-V, plaintiffs allege they
have been subjected to harassment in retaliation for filing
charges of discrimination with the CTA's affirmative action unit,
the IDHR and the EEOC. The CTA moves to dismiss the Title VII
claims of Marshall (Count I), Leonard (Counts I and IV) and
Newberry (Counts I and V) because they have not met the
administrative requirements of Title VII by filing timely EEOC

11

charges, receiving right-to-sue letters and timely filing suit. See Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 128 (7th Cir. 1989). The CTA also contends all of plaintiffs' Title VII claims other than those regarding racial discrimination in promotions should be dismissed.

Many of the CTA's arguments are premature. The CTA relies on documents not properly before the court for purposes of a motion to dismiss. Moreover, the documents that are properly before the court are insufficient to warrant dismissal of the majority of plaintiffs' claims. This is not a case where a plaintiff refers to a specific EEOC charge in his or her complaint, the charge is then attached to the motion to dismiss or response, and thus, the court can determine whether the administrative requirements were met based on the attached charge. See e.g. Saldana, 972 F.Supp. at 455; Greene, 828 F.Supp. at 586, n. 1. Here, the amended complaint generally alleges plaintiffs filed timely charges of discrimination and that they have fully complied with all administrative prerequisites. The amended complaint does not mention specific EEOC charges and corresponding right-to-sue letters or indicate how many were filed or by which plaintiffs. It is clear that plaintiffs allege they have filed numerous EEOC charges and have received various right-to-sue letters. However, it is not clear whether all the relevant EEOC charges and right-to-sue letters have been submitted with the pleadings for this motion. To

12

survive a motion to dismiss, plaintiffs are "under no obligation to attach to [their] complaint documents upon which [their] complaint is based[.]" Venture, 987 at 431. In this situation, the court is reluctant to dismiss plaintiffs' claims for failure to meet Title VII's administrative requirements at this stage in the proceedings. With these concerns in mind the court addresses the CTA's arguments.

### A    Leonard

The CTA contends that Leonard's Title VII claims should be dismissed because he has not properly exhausted his administrative remedies. It asserts Leonard did not give the EEOC an opportunity to investigate his claim or obtain a right-to-sue letter. It also claims many of his allegations are untimely because they arose more than 300 days before he filed his latest EEOC charge. Finally, the CTA argues his allegations of retaliation must be dismissed because his latest EEOC charge contains no mention of retaliation.

The CTA's arguments are not persuasive. Although exhausting administrative remedies is a precondition to filing a Title VII lawsuit, this requirement is not jurisdictional and is therefore subject to equitable modification. Gibson v. West, 201 F.3d 990, 993-94 (2000). Leonard's failure to meet the preconditions can be excused if it is attributable to EEOC error. Schnellbaecher, 887 F.2d at 128-29. Plaintiffs have alleged additional facts in

13

their response brief that, if true, establish Leonard has met the preconditions or was prevented from doing so by the EEOC. Plaintiffs allege Leonard has received a right-to-sue letter for his most recent EEOC charge, which included allegations of individual and classwide discrimination in promotions. They also allege he is entitled to right-to-sue letters on his earlier charges filed with the EEOC which alleged racial discrimination and retaliation. These allegations can be considered because they are consistent with the amended complaint. Hentosh, 167 F.3d at 1173 n. 3. If Leonard is entitled to right-to-sue letters on his earlier EEOC charges, the allegations in the complaint arising more than 300 days before his most recent charge would be timely. See Perdue v. Roy Stone Transfer Co., 690 F.2d 1091, 1095 (4th Cir. 1982) (EEOC inaction may not frustrate plaintiff's efforts to bring suit). Furthermore, Leonard's April 30, 1999 charge explicitly alleges retaliation. Thus, if the factual allegation are proven, Leonard could meet all of the preconditions for his Title VII allegations. In this situation, the court cannot conclude as a matter of law that Leonard would not be entitled to relief under "any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). In short, the motion to dismiss Leonard's Title VII claims must be denied.

14

**B   Newberry**

The CTA argues Newberry's Title VII claims are permanently barred because he did not file suit within 90 days of the EEOC's issuance of his original right-to-sue letter.  It also argues Newberry's allegations are untimely because he alleges discrimination that occurred more than 300 days before his most recent EEOC charge.  Finally, the CTA argues his allegations of retaliation must be dismissed because his EEOC charges contain no mention of retaliation.

The CTA's argument that Newberry's failure to file suit within 90 days of the original letter is based on documents beyond the scope of the complaint and will not be considered. Furthermore, the preconditions of filing a timely EEOC charge, receiving a right-to-sue letter and timely filing suit are subject to equitable modification and may be excused if caused by EEOC error.  Gibson, 201 F.3d at 993-94;  Schnellbaecher, 887 F.2d at 128-29.  Plaintiffs allege Newberry's failure to exhaust his administrative remedies was due to EEOC error.  Accordingly, Newberry's Title VII claims will not be dismissed for failure meet administrative requirements. Furthermore, the EEOC charge for which the original right-to-sue letter was issued was filed on September 10, 1998.  The amended complaint alleges discrimination beginning November 14, 1997, less than 300 days before the charge was filed.  Newberry's Title VII claims are

15

timely.

Newberry's allegations of retaliation that took place before January 25, 2000 must be dismissed. As a general rule, plaintiffs' Title VII claims are limited to those claims asserted in their EEOC charges. Schnellbaecher, 887 F.2d at 127. Newberry filed a charge with the EEOC on September 10, 1998 and amended this charge on January 25, 2000. Newberry did not check the box marked "retaliation" or mention retaliation in either charge. It is true that a plaintiff need not file a fresh EEOC charge if he is alleging retaliation for filing earlier charges. Malhorta v. Cotter & Co., 885 F.2d 1305 (7th Cir. 1989). However, if the alleged retaliation occurred before plaintiff filed his EEOC charge, failure to include allegations of retaliation in the charge will bar suit under Title VII. McKenzie v. Illinois Dep't. of Transportation, 92 F.3d 473, 482 (7th Cir. 1996). Accordingly, Newberry may not sue for any alleged retaliatory acts that took place before he filed his amended charge on January 25, 2000.

### C  Marshall

Dismissal is also warranted on Marshall's Title VII claims. Plaintiffs concede Marshall has not received, or even requested, a right to sue letter from the EEOC. Plaintiffs contend they expect to receive Marshall's right-to-sue well in advance of the trial date and argue that to dismiss Marshall's Title VII claims

16

only to have him re-file them later would exalt form over substance. Plaintiffs' argument is unpersuasive. It is well established that filing a timely charge with the EEOC and obtaining leave to sue are preconditions to filing a Title VII lawsuit. Schnellbaecher, 887 F.2d at 128. This rule is imposed to afford the EEOC and the employer an opportunity to settle the dispute through conference and conciliation, as well as to give the employer warning of the conduct in issue. Id. at 864. The EEOC must have opportunity "to engage in an investigatory and conciliatory function designed to solve the problem before lawsuits are undertaken." McNamara v. City of Chicago, 867 F.Supp. 739, 748 (N.D. Ill. 1994). Although the administrative requirements are subject to the equitable doctrines of waiver, estoppel and tolling, there is no reason to excuse the requirement here. According to plaintiffs' response, Marshall has not even requested permission to sue. In short, Marshall cannot pursue his claim before the EEOC and in federal court at the same time. Bennett v. Central Tel. Co. of Illinois, 545 F.Supp. 891, 892 (N.D. Ill. 1982). Marshall's Title VII claims must be dismissed without prejudice.

D    **Class allegations**

The CTA contends all plaintiffs' Title VII claims other than for promotion should be dismissed. A Title VII complaint may assert, on behalf of a named plaintiff or a class, only claims

17

asserted in the named plaintiff's charge.  <u>Ekanem v. Health &</u>

<u>Hops. Corp</u>. 724 F.2d 563, 572-73 (7th cir. 1983).  The CTA

contends none of the underlying EEOC complaints contain anything

but allegations of promotion denials and thus all other claims

should be dismissed.  Dismissing plaintiffs' class allegations

would be premature.  In light of the factual allegations

surrounding Leonard's and Newberry's EEOC charges and right-to-

sue letters, defining the contours of plaintiffs' class claims is

better left for consideration on plaintiffs' pending motion for

class certification.

## III  The Section 1981 claims

In Counts II through VI, plaintiffs allege discrimination

and retaliation in violation of 42 U.S.C. §1981.  Section 1981

prohibits racial discrimination with respect to making and

enforcing contracts.  42 U.S.C. §1981.  The CTA argues

plaintiffs' §1981 claims should be dismissed for three reasons:

§1981 claims against public actors are barred by <u>Jett v Dallas</u>

<u>Indep. Sch. Dist.</u>, 491 U.S. 701, 731-35 (1989);  plaintiffs fail

to adequately allege a policy or custom; and §1981 does not apply

to plaintiffs' claims.

The first issue that must be decided is whether plaintiffs

can sue the CTA directly under §1981.  In <u>Jett</u>, the Supreme Court

held that §1981 did not provide an implied cause of action

against state actors and that the substantive rights created by

§1981 may be enforced against state actors only under §1983.  The

Supreme Court concluded that a plaintiff who sues a municipality

under §1981, through §1983, may not rely on the doctrine of

respondeat superior and instead must show an official policy or

custom to discriminate.  Id.  Two years later, Congress passed

the Civil Rights Act of 1991 ("the 1991 Act") which amended

§1981.  As amended,  §1981 provides that the "rights protected by

this section are protected against impairment by non-governmental

discrimination and impairment under color of State law."  42

U.S.C. §1981(c).  It is unclear what effect the 1991 changes to

§1981 has on Jett's holding that §1983 is the exclusive remedy

for violations of §1981 by public actors.  Plaintiffs contend the

1991 Act overruled Jett and created a cause of action against

state actors directly under §1981.

The Seventh Circuit has not yet decided the issue.  Other

courts addressing the issue have reached conflicting conclusions.

*Compare* Federation of African American Contractors v. City of

Oakland, 96 F.3d 1204, 1210-14 (9th Cir. 1996) (holding the 1991

amendments overruled Jett and §1981 contains an implied cause of

action directly against state actors); Robinson v. Town of

Colonie, 878 F.Supp. 387, 405 n. 13 (N.D. N.Y. 1995) (same);

Gallardo v. Board of County Comm'rs, 857 F.Supp. 783, 786 (D.

Kan. 1994) (same); *with* Dennis v. County of Fairfax, 55 F.3d 151,

156 n. 1 (4th Cir. 1995) (Jett still good law; §1983 is the

19

exclusive remedy for violations of §1981 by state actors);
Anderson v. Board of Sch. Comm'rs of Mobile County, Ala., 78
F.Supp.2d 1266, 141 (S.D.Ala. 1999) (same); McHenry v.
Pennsylvania State Sys. of Higher Educ., 50 F.Supp.2d 401, 415-16
(E.D.Pa.1999) (same); McPhaul v. Board of Comm'rs of Madison
County, 976 F.Supp. 1190, 1192-93 (S.D. Ind. 1997) (same);
Johnson v. City of Fort Lauderdale, 903 F.Supp. 1520, 1523
(S.D.Fla.1995), aff'd, 114 F.3d 1089 (11th Cir. 1997) (same);
Phillippeaux v. North Cent. Bronx Hosp., 871 F.Supp. 640, 656
(S.D. N.Y. 1994) aff'd, 104 F.3d 353 (2nd Cir. 1993) (same).
Similarly, judges of this court have reached conflicting
conclusions.  Some have adopted the Ninth Circuit's analysis in
Federation, holding that the 1991 changes overruled Jett and
plaintiffs can now sue state actors directly under §1981. See
Naylor v Rockford Park Dist., 1999 WL 626762, *3 (N.D. Ill. July
14, 1999) (Reinhard); Jefferson v. City of Chicago, 1999 WL
116223, *2-4 (N.D. Ill. Feb. 26, 1999) (Williams); Yohannan v.
Patla, 971 F.Supp. 323, 327  (N.D. Ill. 1997) (Aspen); Jackson v.
City of Chicago, 1996 WL 734701, *8 (N.D. Ill. Dec. 18, 1996)
(Castillo).  Others have held that despite the 1991 changes, Jett
remains good law and still bars claims against state actors
brought directly under §1981. See Tabor v. City of Chicago, 10
F.Supp.2d. 988, 991-93 (N.D. Ill. 1998) (Gettlemen); Nolen v.
City of Chicago, 1998 WL 111675, *3-6 (N.D. Ill. Mar. 4, 1998)

(Plunkett); Bennett v. School Directors of Dist. 204, 941 F.Supp.
763, 764-65 (N.D. Ill. 1996) (Shadur).

In Federation, the Ninth Circuit concluded the addition of
§1981(c) overruled Jett and created an implied private cause of
action directly against state actors.  96 F.3d at 1213.  The
court observed that by adding §1981(c), which prohibits
discrimination by both state and private actors, Congress created
parallel protections for §1981 violations.  Id.  It reasoned that
because §1981(c) extends parallel protections, it must extend
parallel remedies.  Id.  Because there already existed an implied
cause of action against private actors for discrimination
directly under §1981, the court reasoned that the addition of
§1981(c) indicated that Congress meant to create an implied
private cause of action directly against state actors as well.
Id.  Thus, the court concluded Congress intended to overrule Jett
and plaintiffs can now sue state actors for damages directly
under §1981.

Plaintiffs contend the Seventh Circuit settled the issue and
approved the Ninth Circuit's analysis in Smith v. Chicago Sch.
Reform Bd. of Trustees, 165 F.3d 1142 (7th Cir. 1999).  See
Naylor, 1999 WL 626762 at *3 (suggesting the Seventh Circuit
addressed the issue in Smith).  However, analysis of the Smith
opinion does not support this conclusion.  In Smith, a white
teacher brought a race discrimination claim against a public
school system.  Id.  After reversing a jury verdict for plaintiff

21

on other grounds, the court addressed plaintiff's §1981 claim in the context of defining the issues on remand. Id. at 1148. In doing so, the court cited Federation in the following context:

> Recovery under §1981 is problematic, . . . the only defendant is the School Board, an agency of municipal government -- and recovery against a governmental body under §1981 may not be based on respondeat superior. The plaintiff must show that the body's official policy or custom was discriminatory. See Jett v. Dallas Independent School District, 491 U.S. 701, 736-37 (1989) (additional citation omitted), applying to suits under §1981 the principles devised for §1983 litigation by Monell v. New York Department of Social Services, 436 U.S. 658 (1978) (additional citation omitted). See also Federation of African American Contractors v. Oakland, 96 F.3d 1204, 1215 (9th Cir. 1996) (concluding that this aspect of Jett remains good law after the 1991 amendments to §1981).

The court then directed judgment against plaintiff on his §1981 claim because he failed to allege an official policy or custom. Smith, 165 F.3d at 1148. The Seventh Circuit does not address whether the 1991 amendments overruled the holding in Jett that §1981 did not provide a cause of action directly against state actors and that the substantive rights created by §1981 may be enforced against state actors only under §1983. The Smith court did not even mention §1981(c) or indicate that it was reaching an issue of first impression in the Seventh Circuit. By citing Federation for the requirement that plaintiff must allege a policy or custom to state a §1981 claim, the Smith court did not adopt the entire Federation opinion.

This court respectfully declines to follow the approach taken by the Ninth Circuit in Federation, 96 F.3d at 1210-14, and

22

followed most recently by Judge Williams in <u>Jefferson</u>, 1999 WL
116223 at *2-5.[1]  Instead, this court concludes that <u>Jett</u> bars
plaintiffs' claims against the CTA directly under §1981.  In
doing so, this court follows Judge Gettleman's analysis in <u>Tabor</u>,
10 F.Supp.2d. at 991-93, and Judge Plunkett's analysis in <u>Nolan</u>,
1998 WL 111675 at *3-6.  Both the plain language and the
legislative history of the 1991 Act support this conclusion.
There is no indication that Congress intended to overrule <u>Jett</u> in
the language, legislative history or legislative scheme of the
statute.

Statutory interpretation begins with the language of the
statute.  <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 566
(1979).  Section 1981(c) states "[t]he rights protected by this
section are protected against impairment by nongovernmental
discrimination and impairment under color of state law."  42
U.S.C. 1981.  The 1991 changes to §1981 did not expressly

---

[1]Of the Northern District of Illinois cases addressing the
issue, only <u>Jefferson</u> actually allowed a plaintiff to proceed
with a §1981 claim directly against a state actor.  <u>Jefferson</u>,
1999 WL 116223 at *2-5.  In <u>Naylor</u>, Judge Reinhard stated that
<u>Smith</u>, 165 F.3d 1142, had addressed the issue and plaintiff could
sue directly under §1981.  <u>Naylor</u>, 1999 WL 626762, at *3.
However, the court dismissed plaintiff's §1981 claim for failure
to allege a discriminatory policy or custom. <u>Id.</u>  Similarly, in
<u>Yohannan</u>, Judge Aspen cited <u>Federation</u> for the notion that a
§1981 cause of action may be brought directly against state
actors but dismissed plaintiff's claim because the official
defendant did not have sufficient personal involvement to be
liable under §1981.  <u>Yohannan</u>, 971 F.Supp. at 327.  In <u>Jackson</u>,
Judge Castillo noted that the 1991 amendments "likely" overruled
<u>Jett</u>, but went on to dismiss plaintiff's claim for failure to
allege a policy or custom.  <u>Jackson</u>, 1996 WL 734701 at *8.

23

authorize a private cause of action against state actors. The fact that it did not counsels such an interpretation. Before the 1991 Act, it was clear the statute did not include such a cause of action. If Congress intended to amend §1981 to allow a private cause of action against state actors for the first time, it likely would have expressly provided for such a cause of action. Tabor, 10 F.Supp.2d at 992.

Plaintiffs may still sue the CTA directly under §1981 if, as the Ninth Circuit found in Federation, the 1991 Act amendment created an implied cause of action against state actors. In Cort v. Ash, 422 U.S. 66 (1975), the Supreme Court set out four factors to be considered in determining whether a statute implies a cause of action for damages: (1) is plaintiff a member of the class for whom the law was enacted? (2) is there any indication that Congress intended to create or deny such a remedy? (3) is implying a remedy consistent with the underlying purposes of the statute? and (4) is the cause of action one traditionally relegated to state law? The Supreme Court has subsequently retreated from the four factor test and stressed the importance of legislative intent. See Thompson v. Thompson, 484 U.S. 174, 179 (1988); Transamerica Mortgage Advisors Inc., v. Lewis, 444 U.S. 11, 15-16 (1979). The factors most relevant to this inquiry are the language of the statute, its legislative history and the legislative scheme. Touche Ross & Co. v. Redington, 442 U.S.

560, 568, 571-71 (1979).  Analysis of these factors leads to the conclusion that in passing the 1991 Act, Congress did not intend to overrule Jett.

There is little discussion about §1981(c) in the legislative history of the 1991 Act.  The legislative history simply states:

> [t]his subsection is intended to codify Runyon v. McCrary.  In Runyon, the Court held that Section 1981 prohibited intentional racial discrimination in private, as well as public, contracting.  The Committee intends to prohibit racial discrimination in all contracts, both public and private.

H.R. Rep. 102-40(II) (1991); see also Runyon v. McCrary, 427 U.S. 160 (1976).  Before Runyon, there was some doubt as to whether §1981 prohibited discrimination committed by private actors.  427 U.S. at 170; Johnson, 903 F.Supp. at 1523.  Thus, "[b]y codifying Runyon, Congress affirmed the principle that §1981 prohibits discrimination by private actors in addition to state actors."  Tabor, 10 F.Supp.2d at 992.  Runyon also held that §1981 created an implied cause of action against discrimination committed by private actors.  Id.; Federation, 96 F.3d at 1213. However, Runyon did not address the question of whether plaintiffs may sue state actors directly under §1981.[2]   Runyon dealt solely with private discrimination under §1981 and had nothing to do with discrimination by state actors.  Thus, it is apparent from the legislative history that Congress' purpose in

---

[2]This question was not addressed until the Supreme Court's decision in Jett, which held that they could not.  491 U.S. 701.

amending §1981 was to confirm that private discrimination was actionable under §1981, not to expand municipal liability under the statute. Plaintiffs' argument that Congress intended to provide an implied cause of action under §1981 against state actors is inconsistent with the purpose of the 1991 amendment as stated in the legislative history. In passing the 1991 amendment of §1981, Congress expressly intended to codify Runyon. Tabor, 10 F.Supp. 2d at 992.

Moreover, the legislative history does not discuss Congress' desire to expand municipality liability beyond §1983 or to overrule Jett. In fact, the legislative history does not mention Jett or its holding whatsoever. As Philippeaux and McPhaul point out, "it would be inconsistent for Congress, while expressly codifying the holding of Runyon, to overrule Jett only by implication, 'thereby eroding the bedrock of municipal liability.'" McPhaul 976 F.Supp. at 1193-94 (citing Philippeaux, 871 F.Supp. at 656, n. 9). This omission is particularly striking in the context of the 1991 Act. It is unlikely Congress' failure to mention Jett in the legislative history was due to oversight or respectful restraint. The 1991 Act was intended to overrule a number of specific Supreme Court cases, in whole or in part. Congress specified the Supreme Court decisions cases that were overruled by the 1991 Act in the legislative history.[3] See Estate

---

[3]For example, the 1991 Act also added paragraph (b) to §1981. Section 1981(b) was intended to overrule the Supreme

of Reynolds v. Martin, 985 F.2d 470, 475 n. 2 (9th Cir. 1993);
Nolen, 1998 WL 111675 at 5 (cataloguing cases overruled in the
1991 Act).  Furthermore, Jett was decided in 1989, only two years
before the 1991 Act, and Congress explicitly mentioned other
decisions from that year in the legislative history.  In the face
of Congress' "blunt repudiation of other Supreme Court
authority," its failure to mention to Jett strongly suggests that
the 1991 Act's addition of §1981(c) was not intended to overrule
Jett and did not create an implied cause of action against state
actors.  Nolen, 1998 WL 111675 at 5.

Unlike with private actors, an implied cause of action
against municipalities under §1981 is not necessary to effectuate
the purposes of the 1991 Act and §1981.  Nolen, 1998 WL 111675 at
*5.  Plaintiffs have remedies against state actors for violations
of their rights guaranteed by §1981.  State actors are liable for
violations of §1981 under §1983.  see Jett, 491 U.S. 701.
Section 1983 provides legal and equitable relief without caps or
limitations.  Nolen, 1998 WL 111675 at *5(citing Donahue v.
Staunton, 471 F.2d 475, 483 (7th Cir. 1972).  In short, the
remedies currently available to victims of governmental

---

Court case Patterson v. McLean Credit Union, 491 U.S. 164 (1989).
In the section of the legislative history discussing  §1981(b),
it states "[t]his subsection overrules Patterson by adding a new
subsection to Section 1981."  H.R. Rep. 102-40(II) (1991).  It is
unlikely that Congress intended to overrule both Patterson and
Jett by adding §1981(b) and (c), but only explicitly mentioned
Patterson.

discrimination through §1983 are adequate without implying a cause of action against municipalities directly under §1981.

In _Federation_, the Ninth Circuit relied on the notion that because §1981 provides parallel protections against discrimination by private and public actors, it must also provide parallel remedies. 96 F.3d at 1213. However, in essence, this was the contention considered in _Jett_. In holding that §1981 did not create an implied cause of action against state actors, _Jett_ addressed the apparent inconsistency of allowing an implied cause of action against private actors but not against state actors. The court explained the fact that it had found an implied cause of action against private actors "does not authorize us to do so in the context of the 'state action' portion of §1981, where Congress has established its own remedial scheme." _Jett_, 491 U.S. at 731. The court continued, "[i]n the context of [§1981], 'we had little choice but to hold that aggrieved individuals could enforce this prohibition, for there existed no other remedy to address such violations of the statute'. . . . That is manifestly not the case here . . ." _Id._ at 731-32. The Supreme Court inferred a cause of action against private parties because without one, plaintiffs would have no other means to enforce the rights protected by §1981. This is not the case with state actors. Congress' stated purpose of the 1991 Act to codify private liability, combined with the availability of existing remedies for §1981 violations against state actors under §1983,

strongly suggest that Congress did not intend create an implied cause of action directly against state actors. Accordingly, plaintiffs' §1981 claims must be dismissed without prejudice.

## CONCLUSION

The CTA's motion to dismiss is granted in part and denied in part. Rahpre Newberry's Title VII allegations of retaliation (Count V) before January 25, 2000 are dismissed with prejudice. The Title VII claims of Brian Marshall in Count I are dismissed without prejudice. All plaintiffs' §1981 claims are dismissed without prejudice. The motion is denied in all other respects.

ENTER:

Suzanne B. Conlon
United States District Judge

April 19, 2000