Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7614 | **DATE** | 7/24/2000 |
| **CASE TITLE** | ANNETTE M. ALLEN, et al. vs. CHICAGO TRANSIT AUTHORITY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion to dismiss [85-1] is granted in part and denied in part. Plaintiffs' §1983 retaliation claims are dismissed without prejudice. The motion is denied in all other respects. The motion to bar Allen's and Burnette's §1983 claims as untimely [86-1] is denied. Defendant shall answer the second amended complaint by August 7, 2000. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 25 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 108 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/24/2000 | |
| WS | courtroom deputy's initials | 00 JUL 24 PM | date mailed notice JAD7 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANNETTE M. ALLEN, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 99 C 7614 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DOCKETED

JUL 2 5 2000

## MEMORANDUM OPINION AND ORDER

Annette M. Allen, Shelley S. Burnette, Earnest Leonard, Brian Marshall and Rahpre Newberry ("plaintiffs") sue the Chicago Transit Authority ("the CTA") for employment discrimination and retaliation pursuant to Title VII, 42 U.S.C. §2000e et seq. and 42 U.S.C. §1983. The CTA moves to dismiss all plaintiffs' §1983 claims (Count II) and Newberry's unlawful harassment claim (Count V) pursuant to Fed. R. Civ. P. 12(b)(6). In a separate motion, the CTA moves to bar as untimely Allen's and Burnette's §1983 claims pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

## BACKGROUND

**I        Procedural history**

Plaintiffs originally filed their class action complaint November 23, 1999. Plaintiffs filed an amended complaint February 15, 2000. In their first amended complaint, plaintiffs alleged they have been denied promotions, equal pay, and other substantial employment benefits by the CTA on the basis of race, in violation of Title VII (Count I) and 42 U.S.C. §1981 (Count II). In Counts III-V, plaintiffs alleged they were harassed in retaliation for filing discrimination charges also in violation of Title VII

and §1981. On April 19, 2000, this court dismissed plaintiffs' §1981 claims on the ground that §1981 neither expressly nor impliedly contains a private cause of action. This court also dismissed Newberry's Title VII allegations of retaliation (Count V) arising before January 25, 2000 with prejudice and Marshall's Title VII claims (Count I) without prejudice. On May 31, 2000, this court granted plaintiffs leave to file a second amended complaint. Plaintiffs reassert the allegations from the first amended complaint and substitute 42 U.S.C. §1983 as the basis for their §1981 claims. The second amended complaint also changes the title of Newberry's claim in Count V from "retaliation" to "harassment." Aside from these changes, the second amended complaint is essentially identical to plaintiffs' previous complaint. It adds no new parties, it contains no new factual allegations and it asserts no new substantive claims. The CTA moves to dismiss all plaintiffs' §1983 claims and Count V of the second amended complaint.

## II    Factual background

### A    The parties

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996). The CTA is an Illinois municipal corporation engaged in the business of providing public transportation in Chicago. CTA employees are generally organized into three branches: management and performance; customer service, facilities and development; and transit operations. Plaintiffs are African-American CTA employees who work within the management and performance branch. Allen and Burnette are senior personnel specialists in the human resources division. Allen has worked for the CTA since March 1986 and Burnette since June 1987. Leonard is a duplicator operator III in the communications department. Leonard has

worked for the CTA since 1991. Marshall is currently the professional programs coordinator within the training department and has worked for the CTA since 1989. Newberry is a communications specialist in the management information systems department and has worked for the CTA since 1990.

### B. Allegations of racial discrimination and retaliation

Allen and Burnette claim the CTA improperly denied them promotion opportunities due to their race. They assert the CTA failed to follow a consistent pattern or practice concerning the filling of available open positions in their department. Allen and Burnette allege that on numerous occasions, the CTA filled open managerial positions without posting notice of the openings to allow existing employees to apply for the positions and also denied them posted positions. They contend that since September 1997, they qualified for numerous promotion opportunities but the CTA filled the positions with less qualified whites. Allen and Burnette complained to the CTA's affirmative action unit claiming racial discrimination. The CTA's affirmative action unit found they had been subjected to racial discrimination in promotions, but no action was taken. On October 24, 1997, Allen and Burnette filed discrimination charges with the IDHR and EEOC. They allege that after they initially complained about discrimination, both were harassed with unwarranted disciplinary actions. Allen and Burnette allege they have been selectively disciplined while uncomplaining employees are not disciplined for the same conduct. On February 9, 1999, Allen filed an additional discrimination charge with the IDHR and the EEOC complaining of retaliation and received a right-to-sue letter. Burnette filed an additional discrimination charge with the IDHR and the EEOC complaining of retaliation on August 13, 1999, but has not yet received a right-to-sue letter concerning this charge.

The CTA hired Leonard in 1991 as a bus driver. In February 1993, Leonard transferred to the CTA's printshop, where he presently works. Leonard alleges that in September 1997, the position of manager of reprographics was posted and he applied. Leonard was not selected and the position was filled by Joseph Mitria, a non-African-American employee with no printing experience. Within a year of Mitria's promotion, Leonard sought but was denied a grade 5 position within the print department. While the reason given for denying Leonard the upgrade was a lack of funds, he alleges that two white employees with less seniority were given upgrades. In late 1998, a coordinator position was posted for which Leonard asserts he was fully qualified. He applied for the position but was not selected and a non-African-American employee with less experience filled the position. In November 1998, another coordinator position was posted for which Leonard was qualified and he again applied. Despite his qualifications, Leonard was not selected and the position was filled by a non-African-American from outside the CTA. In August 1998, Leonard filed a complaint of racial discrimination with the CTA's affirmative action unit alleging he had been denied promotions and harassed due to his race. As a result, Leonard was upgraded to a temporary grade 7 position. After he filed this complaint, Leonard alleges he has been subjected to a campaign of harassment, including a demotion, unwarranted disciplinary warnings and writeups, and interference with other promotion opportunities.

The CTA hired Marshall in 1989 as a professional programs assistant. Marshall is currently a professional program coordinator. Marshall alleges that in late 1997 or early 1998, the CTA established a customer service division and the president of the CTA recommended him for the position of general manager, data research and business outreach. Marshall claims this promotion was vetoed by the vice president of human resources and the position was not filled. Marshall further alleges that in August 1998, the position of general manager of market development and special events

became vacant but the CTA filled the position, without posting it, with a non-African-American who was not as qualified as Marshall. In February 1999, the CTA posted an opening for the position of manager of marketing and Marshall applied. According to Marshall, he was the most qualified candidate but the CTA decided not to fill the position rather than offer it to him.

Newberry was hired by the CTA in 1990 as a senior program analyst. Newberry claims that beginning in 1994, he was consistently assigned work outside his job description and was not permitted to perform the work of a senior program analyst. Newberry claims he was denied opportunities for pay increases and has been denied the opportunity for advancement and promotion as a result. Newberry further alleges he was paid less than non-African-American senior program analysts in his department. In January 1998, Newberry filed a complaint with the CTA's affirmative action unit alleging his adverse treatment, including denial of pay increases and promotions that were given to non-African-American analysts. On August 24, 1998, the CTA's affirmative action unit found "cause to support [Mr. Newberry's] allegation of race and adverse treatment." Newberry further claims the CTA retaliated against him after he initially filed a complaint with the CTA's affirmative action unit in January 1997. Newberry alleges that since filing the complaint, he has been subjected to a campaign of harassment, including trumped-up disciplinary charges, constant reassignments, pervasive monitoring and assignments of meaningless jobs outside his classification. As a result of the stress, Newberry was forced to take a six month leave of absence. Newberry asserts that upon his return, the CTA resumed its pervasive monitoring of his every move.

C    **Class allegations**

Plaintiffs allege the CTA has continuously discriminated against African-American employees in awarding promotions. Plaintiffs claim because of this discrimination, the CTA has frequently

declined to award promotions to fully qualified African-American applicants and instead has promoted less qualified non-African-Americans. Plaintiffs claim the CTA has implemented these discriminatory promotion practices in some cases by posting job openings and then promoting non-African-Americans in the place of African-American applicants who are equally or better qualified. In other cases, the CTA has implemented its discriminatory promotion and salary practices by not posting job openings and by placing non-African-Americans in the non-posted positions without affording African-Americans the opportunity of applying. According to plaintiffs, the CTA has paid African-American employees at lower salaries than non-African-Americans at the same level and with comparable seniority. As a result of these practices, a disproportionately high number of African-Americans occupy lower paid jobs with less authority and responsibility, while a disproportionately high number of non-African-Americans occupy the higher paid jobs with more authority.

## DISCUSSION

**I**    **Motion to dismiss standard**

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A motion to dismiss tests the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). A complaint is not required to allege all, or any, of the facts supporting a claim. Bennet v. Schmidt, 153 F.3d 516 (7th Cir. 1998). All that is required is a short and plain statement showing that plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a); Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). Any ambiguities in the complaint are construed in

plaintiffs' favor. Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1205 (7th Cir. 1998). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle him to relief. Travel All Over the World, Inc., 73 F.3d at 1429.

**II      Section 1983 claims**

In Counts II through IV, plaintiffs claim the CTA violated §1983 by discriminating and retaliating against plaintiffs in violation of §1981. Section 1981 prohibits racial discrimination with respect to making and enforcing contracts and §1983 provides plaintiffs a private cause of action against state actors for such violations. 42 U.S.C. §§1981 and 1983. The CTA argues plaintiffs' §1983 claims should be dismissed for two reasons: plaintiffs fail to adequately allege a policy or custom of discrimination to support municipal liability, and §1981 does not apply to plaintiffs' claims.

**A      Policy or custom of discrimination[1]**

Municipalities and other local government entities may be held liable under §1983. However, a local government entity may not be held liable under §1983 on a respondeat superior theory. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978). Government bodies can only be sued where constitutional deprivations occur pursuant to an official governmental policy or custom. Id. at 691. There are three recognized contexts where a municipality or other local governing body can be sued under §1983: (1) for an express policy that, when enforced, causes a

---

[1] Initially, plaintiffs claim that this court has already rejected the CTA's policy or custom argument in its prior rulings and therefore this motion must be denied under the rule of the case doctrine. Contrary to their assertions, this court has not ruled that plaintiffs' complaint sufficiently alleges a policy or custom. In the April 19, 2000 order, this court granted the CTA's motion to dismiss in part and dismissed plaintiffs' §1981 on the ground that §1981 does not provide a private cause of action. In doing so, this court did not reach the issue of whether the complaint adequately alleged a policy or custom for municipal liability. Similarly, by granting plaintiffs leave to file their second amended complaint in the May 31, 2000 order, this court simply allowed plaintiffs to file the complaint; it did not reach a conclusion on its sufficiency.

7

constitutional deprivation; (2) for a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) for an allegation that the constitutional injury was caused by a person with final policymaking authority. Abbott v. Village of Winthrop Harbor, 205 F.3d 976, 2000 WL 246419 *5 (7th Cir. March 8, 2000) (citing Baxter v. Vigo County School Corporation, 26 F.3d 728, 734-35 (7th Cir.1994)). In other words, there must be an "affirmative link" between the municipal policy, practice or custom and the alleged statutory violation. Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

The Supreme Court has made it clear that there is no heightened pleading requirement for §1983 claims. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). The federal system of notice pleading applies to §1983 claims and plaintiffs alleging a municipal policy or custom are not required to give detailed facts in support of their claims. Id. However, the Seventh Circuit has repeatedly held that "boilerplate allegations of a municipal policy entirely lacking in any factual support that a policy exists are insufficient." Looper Maintenance Service Inc. v. City of Indianapolis, 197 F.3d 908, 913 (7th Cir. 1999) (quoting Sivard v. Pulaski County, 17 F.3d 185, 188 (7th Cir. 1994); see also McTigue v. City of Chicago, 60 F.3d 381, 382-83 (7th Cir. 1995); Ross v. City of Chicago, 2000 WL 343221, *2 (N.D. Ill. March 31, 2000). To state a claim under Monell, a plaintiff must "allege a specific pattern or series of incidents that support the general allegation of a custom or policy." Henry v. Farmer City State Bank, 808 F.2d 1228, 1237 (7th Cir.1986). Plaintiffs do not claim that the CTA has an express policy of racial discrimination. The parties dispute whether plaintiffs meet the second or third possible scenarios for municipal liability.

8

### 1    Discrimination in promotions and equal pay

Plaintiffs sufficiently allege a policy or custom of racial discrimination in awarding promotions and equal pay to survive the motion to dismiss. Plaintiffs claim the CTA has a longstanding and widespread practice of denying promotions to African-American employees. Specifically, plaintiffs allege:

> At all times relevant hereto, on a continuous basis, the CTA has, as it policy and custom, discriminated against African-American employees in awarding promotions and filling vacancies within its exempt ranks. Because of this discrimination, even though African-Americans have sought or been available for promotions for which they were fully qualified, the CTA has frequently declined to award such promotions to, and fill vacancies with, fully-qualified African-American applicants, and has, instead, awarded such positions to less-qualified non-African-Americans. These discriminatory practices continue to the present time.

Second am. compl. ¶ 44. The complaint also contains allegations of a policy of discrimination against African-Americans in salary. Plaintiffs allege:

> At all times relevant hereto, on a continuous basis, and, as its policy and custom, the CTA, in its exempt ranks, has paid African-American persons at lower salaries than non-African-Americans in the same job classification and a t the same grade level and with comparable or less seniority. These discriminatory practices continue to the present time.

Id. ¶ 46. Plaintiffs further allege that despite findings of discrimination by the CTA's own affirmative action investigations, the CTA did nothing to rectify the situation. From these allegations, a jury could conclude that there is a widespread practice at the CTA that, although not officially authorized by express CTA policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law.

The CTA arguments otherwise are unpersuasive. The CTA contends the complaint is insufficient because it only contains boilerplate allegations of a custom or policy without any factual

support. However, the complaint does provide factual support for its allegations of a policy or custom. In addition to the general allegations of discrimination, plaintiffs specifically allege more than nine separate incidents of discrimination against the five different plaintiffs. They further allege the discrimination is ongoing and that, because many promotions were made without posting the positions, there may have been instances where plaintiffs were denied the opportunity for promotion without their knowledge. Furthermore, the complaint alleges that as a result of the CTA's discriminatory practices, "numerous CTA employees have filed numerous complaints and charges of racial discrimination, including discrimination in pay and promotions, both within the CTA and with outside agencies." Id. ¶ 48. These allegations distinguish this case from those relied on by the CTA. *See* Ross v. City of Chicago, 2000 WL 343221, *2-3 (N.D. Ill. March 31, 2000) (allegations of policy or custom conclusory and too vague where plaintiff offered "no facts" in support of his claim); Obermeyer v Pedicini, 2000 WL 290444, *2-3 (N.D. Ill. March 17, 2000) (absence of any facts to support plaintiff's claim rendered allegations mere legal conclusions devoid of any well-pleaded facts). In Ross and Obermeyer, the court dismissed complaints that contained only boilerplate allegations on Monell grounds. Id. Here, plaintiffs have alleged more than a single incident of discrimination in conjunction with boilerplate language of a policy or custom. Plaintiffs have alleged repeated incidents of racial discrimination in multiple departments over a span of years. Plaintiffs have sufficiently alleged a CTA policy or custom of racial discrimination to survive the motion to dismiss.

### 2   Retaliation

The CTA fares better with its argument against the sufficiency of plaintiffs' §1983 retaliation claims. Plaintiffs do not sufficiently allege that the CTA has a policy or custom of retaliating against African-American employees who complain of discrimination. The general allegations of a policy and

custom only mention discrimination against African-Americans in awarding promotions and paying African-Americans at lower salaries. Furthermore, plaintiffs do not include retaliation in their class-wide allegations. In essence, there are no allegations that the CTA engaged in a pattern or practice of retaliation. The only allegations of retaliation are the incidents against individual plaintiffs. Without more, the allegations in the second amended complaint fail to meet the liberal pleading standard for municipal liability set out in Leatherman. Unlike their claims of discrimination in promotions and equal pay, plaintiffs' §1983 claims of retaliation are not supported by sufficient allegations to warrant municipal liability. Accordingly, plaintiffs' retaliation claims brought under §1981, and pursuant to §1983, must be dismissed.

**B  The applicability of §1981 to plaintiffs' claims[2]**

Section 1981 prohibits all racial discrimination with respect to making and enforcing contracts. 42 U.S.C. §1981. The Civil Rights Act of 1991 amended §1981 to include contract performance as well as formation Id. However, even as amended, §1981 continues to center on the protection of contractual rights. Gonzales v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1034 (7th Cir. 1998). The CTA contends plaintiffs' §1981 allegations are insufficient because they fail to identify what contract term they seek to enforce. The CTA claims that because plaintiffs do not allege that their employment contracts contain promises not to discriminate on racial grounds, plaintiffs do not state a claim for discrimination under §1981.

---

[2]Plaintiffs also claim that this court previously rejected the CTA's argument that §1981 does not apply. This court did reject the CTA's argument that §1981 does not apply to plaintiffs' allegations in its January 27, 2000 order. The court concluded that an at-will employee has a sufficient contractual relationship to support a §1981 claim and that Allen and Burnette had sufficiently alleged a contractual relationship. However, the CTA claims plaintiffs and this court misconstrued its brief and did not address the essence of its argument. To avoid confusion, this court will address the CTA's argument.

11

The CTA's argument is unpersuasive. Even if plaintiffs are eventually required to prove the existence of a specific contractual provision forbidding racial discrimination in their employment contract to recover under §1981, they are not required to allege its existence in their complaint. It is well established that to survive a motion to dismiss, plaintiffs do not need to allege all, or any of the facts supporting a claim. Bennet, 153 F.3d 516. All that is required is a short and plain statement showing that plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a); Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). Plaintiffs have clearly alleged a contractual relationship with the CTA and that they have been denied promotions and equal pay due to their race in violation of §1981. This is sufficient to survive a motion to dismiss. Considering these allegations and the liberal pleading standard of the federal rules, the court cannot conclude that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Accordingly, the motion to dismiss plaintiffs' §1981 promotion and equal claims brought under §1983 must be denied.

## II  Newberry's claims

In plaintiffs' first amended complaint, Count V was entitled "Unlawful retaliation -- Newberry" and alleged that Newberry has been subjected to a campaign of harassment since filing a complaint with the CTA's affirmative action unit January 1, 1997. In the April 19, 2000 order, this court dismissed Newberry's Title VII allegations of retaliation before January 25, 2000. Count V of the second amended complaint, now entitled "unlawful harassment -- Newberry," contains the identical factual allegations advanced in the first amended complaint. The CTA contends that Count V should be dismissed in its entirety because it fails to allege any retaliatory conduct after January 25, 2000. It is clear that Newberry may not recover under Title VII for alleged retaliation that took place before

January 25, 2000. It is also clear that Newberry may not recover under §1983 for any of the allegations contained in Count V because discrimination in promotions or equal pay are not alleged. These are the only §1983 claims that sufficiently allege municipal liability. However, dismissal of Count V in its entirety is unwarranted. Reading the complaint in the light most favorable to Newberry, Count V may include allegations of racial harassment in violation of Title VII that were the subject of a timely EEOC charge. Also, it is unclear from the complaint whether any of the alleged retaliation took place after January 25, 2000. Although the CTA asserts Newberry testified he has not suffered any retaliation after this date, the CTA may not rely on evidentiary materials outside the complaint to support a motion to dismiss. Thus, Count V of the second amended complaint survives the motion to dismiss as far as it alleges unlawful racial harassment and retaliation after January 25, 2000 in violation of Title VII.

## III   The CTA's motion to bar Allen's and Burnette's §1983 claims as untimely

In a separate motion, the CTA moves to bar Allen's and Burnette's §1983 claims as untimely pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1. A motion pursuant to Fed. R. Civ. P. 56 is a motion for summary judgment. Even though the parties do not expressly identify this motion as such, the court will apply the legal standards for summary judgment to the CTA's motion.

### A   Facts relevant to the timeliness of the claims

The court views the background facts in a light most favorable to plaintiffs as the non-movant; all disputed facts must be resolved in their favor for purposes of this motion. Plaintiffs allege they were denied promotions on September 17, 1997. Allen and Burnette both immediately believed they had been discriminated against when informed of the CTA's decision not to promote them and filed complaints shortly thereafter. In fall 1999, Allen and Burnette and the CTA entered into a series of

13

agreements to toll the statutes of limitation for their Title VII and §1981 claims. The agreements expressly mentioned the statutes of limitations for Allen's and Burnette's Title VII right-to-sue letters and their §1981 claims. The agreements also provided that "[n]o other claims that the Claimants may have against the CTA, its employee, and officials are tolled by this Agreement." These agreements tolled the statutes of limitation from August 20, 1999 to November 23, 1999. Allen and Burnette originally filed their lawsuit alleging discrimination in violation of Title VII and §1981 on November 23, 1999. They filed an amended complaint on February 15, 2000. This court dismissed plaintiffs' §1981 claims on the ground that §1981 does not provide a private cause of action on April 19, 2000. This court granted plaintiffs leave to file their second amended complaint inserting §1983 as the basis for their §1981 claims on May 31, 2000.

## B  Summary judgment standard

A movant is entitled to summary judgment when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

## C  Discrimination in promotion claims

Section 1983 provides a cause of action for violations of the constitution and laws of the United States committed under color of state law. Plaintiffs assert §1983 claims against the CTA for racial discrimination in violation of §1981. Section 1983 claims are governed by state law statutes of limitation. Wilson v. Garcia, 471 U.S. 261, 275 (1985). In Illinois, the statute of limitations pertaining to personal injury claims is two years from the time the action accrues. 735 ILCS 5/13-202. A §1983 cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *See* Sellars v. Perry, 80 F.3d 243, 245 (7th Cir.1996); Popp v. City of Aurora, 2000 WL 684804, * 2 (N.D. Ill. May 22, 2000). For their §1983 allegations of discrimination to be timely, Allen and Burnette must have filed their §1983 claims within two years of September 17, 1997.

The CTA claims Allen's and Burnette's claims are barred because they filed their second amended complaint asserting §1983 claims more than two years after they allegedly were denied promotions due to their race. It contends there is no reason to exclude any of the time between September 17, 1997 and the date plaintiffs filed their second amended complaint. Allen and Burnette argue their §1983 claims are timely because the allegations in the second amended complaint relate back to their original complaint and the tolling agreements apply to all their claims. Allen and Burnette conclude that when the filing date of the original complaint is combined with the three months tolled by agreement, their §1983 claims were filed within the two year limitations period.

Allen and Burnette are correct. The allegations in the second amended complaint relate back to the date of plaintiffs' first complaint. Under Fed. R. Civ. P. 15(c), an amendment of a pleading relates back to date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in

15

the original pleading." As the CTA points out, plaintiffs amended their complaint to add §1983 claims simply because this court determined they could not bring their claims directly under §1981. The factual allegations regarding the promotions at issue are identical. The §1983 claims in the second amended complaint clearly arose out the conduct, transaction or occurrence set forth in the original complaint. Accordingly, the court treats plaintiffs' §1983 claims as if they were filed on November 23, 1999, the date their original complaint was filed.

This is not the end of the inquiry. November 23, 1999 is still more than two years after Allen's and Burnette's actions accrued unless the tolling agreements also apply. The CTA argues the tolling agreements do not apply to the §1983 claims because they provide that "no other claims which the Claimants may have against the CTA . . . are tolled by this Agreement." The CTA's argument is unpersuasive. Even though §1983 is the source of the cause of action, plaintiffs' claims are still §1981 claims in substance. By entering the tolling agreement, the parties intended to give themselves time to resolve plaintiffs' discrimination complaints before a lawsuit was filed without plaintiffs losing their right to file suit. To bar Allen's and Burnette's §1981 claims because they are brought pursuant to the cause of action provided by §1983 would defeat the purpose of the tolling agreement. As Allen and Burnette point out, the tolling agreements apply to substantive legal rights protected by §1981 claims and the second amended complaint contains substantive legal claims delineated by §1981's protections. Therefore, the agreements apply to the discrimination claims in the second amended complaint.

In sum, Allen's and Burnette's §1983 discrimination claims were timely filed within the two year statute of limitations. Allen and Burnette were allegedly denied promotions on September 17, 1997. Originally, they had until September 17, 1999 to file their complaint. However, the limitations

period was tolled from August 20, 1999 until November 23, 1999. Allen and Burnette filed their original complaint on November 23, 1999. Plaintiffs' second amended complaint, filed May 31, 2000, relates back to the date of their original complaint and is considered filed on November 23, 1999. Thus, Allen's and Burnette's claims are timely. Accordingly, the motion to bar Allen's and Burnette's §1981 discrimination claims brought pursuant to §1983 must be denied.

### D    Retaliation claims

The CTA argues that Allen's and Burnette's allegations of retaliation are partly time barred. However, because plaintiffs fail to adequately allege that the CTA has a policy or custom of retaliation against African-American employees, their claims of retaliation brought pursuant to §1983 must be dismissed. Accordingly, the CTA's motion bar Allen's and Burnette's §1983 retaliation as untimely claims is moot.

## CONCLUSION

The motion to dismiss is granted in part and denied in part. Plaintiffs' §1981 retaliation claims brought pursuant to §1983 are dismissed without prejudice. The motion is denied in all other respects. The motion to bar Allen's and Burnette's §1983 claims as untimely is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

July 24, 2000

17